THEODORE M. GIBBONS, JR., as Ancillary Committee of the Property of CHARLES L. SCHWARTZ, Appellant, v. MARGARET F. SCHWARTZ, Respondent.

First Department, May 9, 1941.

*Richard I. Weiser*, for the appellant.

*S. Arthur Glixon* of counsel [*Herman Scheckner* with him on the brief; *S. Arthur Glixon*, attorney], for the respondent.

COHN, J. The original plaintiff herein was Charles L. Schwartz, who brought suit by Leonard M. Halpern, a guardian *ad litem* duly appointed by order of a justice of the Supreme Court. Schwartz was adjudged an incompetent on April 10, 1939, and on June 13, 1940, Theodore M. Gibbons, Jr., who on November 30, 1939, had been duly appointed ancillary committee of the property of Charles L. Schwartz, was substituted in place of the original plaintiff herein.

There are two causes of action stated in the complaint: (1) To recover damages from defendant, who is plaintiff's wife, in the sum of $12,570.94, for the alleged conversion of the proceeds of accounts in three savings banks held jointly in the names of Charles L. Schwartz and Margaret F. Schwartz, his wife, and (2) to replevy certain articles of personal property which plaintiff claims defendant possesses and wrongfully withholds.

As to the first cause of action plaintiff testified that the money deposited in the joint accounts was his property and that these funds had all been withdrawn by his wife. Concededly, the three savings bank accounts were " held jointly in the names of Charles L. Schwartz and Margaret F. Schwartz," and the documentary proof produced by plaintiff showed that the accounts were in the names of both plaintiff and defendant, the proceeds of each account payable to either or to the survivor.

While the proof as to the first cause of action was insufficient to support a suit for conversion, we are of the view that the trial court should not have directed a verdict for defendant. We do not agree, however, with plaintiff's contention that a verdict upon this cause of action should have been directed in his favor.

The opening of a bank account in the form prescribed by subdivision 3 of section 239 of the Banking Law creates a presumption that the interest of the depositors is that of joint tenants. (*Marrow* v. *Moskowitz*, 255 N. Y. 219; *Moskowitz* v. *Marrow*, 251 id. 380, 389.) Such presumption, however, is not conclusive and may be overcome by proof that the depositor when making the deposit had no intention to create a joint tenancy. (*Matter of Porianda*, 256 N. Y. 423, 425.) The proof adduced by plaintiff on the trial of this action was manifestly inadequate to destroy the presumption of joint tenancy. Plaintiff's only testimony in this connection was in answer to a question as to whether it was his recollection that the savings accounts were trust accounts at all times. His answer was in the affirmative and that " They were made that way, in case something happened to me the money would be turned over to her. That was the understanding." This clearly is not enough to overcome the statutory presumption.

As to the second cause of action, there was a complete failure of proof of the value of the chattels sought to be replevied or that any demand had ever been made on defendant for their delivery.

In view of the facts disclosed, we think that a new trial should be ordered as to both the first and second causes of action.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., GLENNON and CALLAHAN, JJ., concur; DORE, J., dissents from the direction for a new trial and votes for direction of judgment in favor of plaintiff.

DORE, J. (dissenting in part). After a trial before the court and a jury, the trial justice directed a verdict in favor of defendant, wife of plaintiff, who sued her for bank deposits and personal property taken by her without his consent. From the judgment entered on the verdict appeal is taken by plaintiff's ancillary committee, appointed after the trial.

Plaintiff, the husband, testified without contradiction that the money deposited in the joint accounts in the savings banks was his property. His testimony was corroborated by representatives of two of the banks in which most of the money had been deposited. Defendant rested at the close of plaintiff's case, made no motion to dismiss for failure of proof, and adduced no evidence whatever. Both sides having moved for direction of a verdict, the trial justice thereupon directed the verdict in defendant's favor. We think the verdict was clearly erroneous and the judgment should be reversed.

Charles L. Schwartz, now the ward of the ancillary committee, plaintiff, and Margaret F. Schwartz, defendant, were married in 1916 and lived together as man and wife until January, 1936, when they separated. From the time of the marriage plaintiff worked steadily and after the first six months was the only member of the family who continued to work and contribute to the family's support. Plaintiff testified he gave his wife his earnings to save for him and deposit in savings accounts, the understanding being that she would get the money if he died. The account in the Emigrant Industrial Savings Bank was originally opened May 10, 1916, as a trust account in plaintiff's name for the benefit of his wife; in 1931 it was changed to " Charles L. Schwartz or wife Margaret F. or the survivor," and the money in the trust account was transferred to a joint account. Plaintiff, in 1921, opened an account in the Harlem Savings Bank originally as a trust account of plaintiff in trust for defendant; in 1931 that too was changed to a joint account, and the money in the trust account transferred

thereto. A third and smaller account in the Bowery Savings Bank was from its inception a joint account.

Defendant in her answer admitted that after the separation between the parties in January, 1936, she withdrew all the money in the three bank accounts without the authorization or consent of plaintiff. Such withdrawals were:

| | |
|---|---:|
| (1) On January 29, 1936, from the Emigrant Industrial Savings Bank............................... | $6,064 46 |
| (2) On February 1, 1936, from the Harlem Savings Bank........................................ | 5,796 86 |
| (3) On May 4, 1936, from the Bowery Savings Bank........................................ | 709 62 |
| The total thus withdrawn amounted to......... | $12,570 94 |

Defendant also admitted in her answer, by failure to deny, that plaintiff " at no time transferred any actual ownership in said accounts or in the money represented by them to his wife, the defendant." The testimony of representatives of the Harlem Savings Bank and the Emigrant Industrial Savings Bank together with the exhibits produced from those banks conclusively established that the money in the joint account in those two banks came entirely from trust accounts which had been in plaintiff's name and as such was his sole property. (*Matter of Totten*, 179 N. Y. 112.)

Defendant relies on subdivision 3 of section 239 of the Banking Law (formerly section 249) providing that savings bank deposits in form to be paid to the depositor or the survivor become the property of such persons as joint tenants and may be paid to either during the lifetime of both or to the survivor after the death of one of them. But during survivorship of both parties, that section, even as between persons who are not husband and wife, raises only a rebuttable presumption of joint tenancy. " This presumption is not conclusive and may be overcome by proof that the depositor, when making the deposit, had no intention to create a joint tenancy." (*Matter of Porianda*, 256 N. Y. 423, 425; *Moskowitz* v. *Marrow*, 251 id. 380, 389, 396; *Marrow* v. *Moskowitz*, 255 id. 219; 48 A. L. R. 189 *et seq.;* 66 id. 881, 884, 891; 103 id. 1123, 1134.)

In the absence of proof that a joint tenancy was not intended, each joint owner would have a right " to withdraw a moiety or less than a moiety " for his own use, but that does not mean the entire account could be thus withdrawn. (See *Matter of Suter*,

258 N. Y. 104, 106.)   Here the proof has destroyed the rebuttable presumption raised by the statute.  In *Moskowitz* v. *Marrow* (251 N. Y. 380, 396, 397), in his concurring opinion in which the court concurred, CARDOZO, Ch. J., said:

"The statute, as I view it, does not mean that between the persons named as depositors a joint tenancy ensues at once and automatically, as an irrebuttable presumption, with the result that neither will be permitted even during the joint lives to prove against the other that the deposit was made with a contrary intention.   For the bank which has paid, the form of the account is, indeed, an absolute protection, unless written notice has been given by either one of the depositors· (cf. Banking Law, §§ 148, 198) ' not to pay such deposit in accordance with the terms thereof.' For the depositors themselves, the form is not conclusive in any contest during their joint lives as to the title to the moneys * * *.

" An irrebuttable presumption would close the door to testimony, direct or circumstantial, that in opening the deposit the incidents of a joint tenancy had been varied by agreement.   Many a family settlement, made in the informal fashion to be expected among relatives, would be opened up for scrutiny after years of acquiescence."

In that case the relationship between the parties was not that of husband and wife, but KELLOGG, J., in his opinion, pointed out that the rule with regard to joint deposits in the name of husband and wife of moneys belonging solely to the husband, is somewhat of an anomaly in the law of property, and referring to *Matter of Kane* (246 N. Y. 498), said: " In such an instance the husband and wife never become joint tenants in the true sense.   Thus, in *Matter of Kane* it was said: ' The cases hold, it is true, that a husband who puts the title to a chose in action in the name of himself and his wife jointly does not create a joint tenancy in the strict sense.' "

When a husband makes a deposit with his funds in the joint names of himself and wife, the presumption (which here conforms to the proof) is that he did this with the intention that upon his death the title, if still in the joint names, should pass to the survivor. (*West* v. *McCullough*, 123 App. Div. 846; affd., 194 N. Y. 518.) " The cases hold * * * that a husband who puts the title to a chose in action in the name of himself and his wife jointly does not create a joint tenancy in the strict sense." (CARDOZO, Ch. J., in *Matter of Kane*, 246 N. Y. 498, 504.)   In that state of facts, while the husband lives " his control over it is unlimited, and at his death it becomes her absolute property if she survives him, but if she does not, the gift is not consummated and the husband retains the entire title." (*Matter of Albrecht*, 136 N. Y. 91, 95.)

In this case the parties are husband and wife; the moneys deposited were solely the husband's; the mere fact that the accounts at the time of the withdrawals were in their joint names did not in and of itself establish any gift nor give, as against the husband, exclusive control to the wife; the husband retained the right to withdraw the fund and use it for his own purposes. (*Schneider* v. *Schneider*, 122 App. Div. 774, 778.) In the *Schneider* case a husband, having a deposit in a bank, changed the account into the joint names of himself and his wife to pay to either or the survivor. The wife claimed a gift of half of the fund but judgment in her favor was reversed. This court, by CLARKE, J., said: " Exclusive control thereof was not lost by the plaintiff [the husband], nor acquired by the defendant, and the inference from the account, pointed out by the cases, is entirely borne out by the testimony of the plaintiff that it was so opened to permit the defendant to draw from said account in case of necessity or sickness, and to vest her with the title to the same upon plaintiff's death."

In the recent case of *Marks* v. *Marks* (250 App. Div. 289) this court unanimously reversed a judgment in favor of a wife in an action instituted by the husband to impress a trust upon funds deposited by the wife in her name in a savings bank which represented the balance of an allowance for household expenses. More recently, in *Dunne* v. *Dunne* (259 App. Div. 870, May 17, 1940), we affirmed an order denying the defendant wife's motion to dismiss a husband's complaint seeking to impress a trust on moneys deposited in savings banks which had originally been in a joint account in the name of husband and wife, and without the husband's knowledge the wife had withdrawn the money and put it in accounts in her own name.

The evidence in this record that only plaintiff's money went into the bank accounts stands uncontradicted. The pleadings as well as the proof established that there was no gift *in præsenti* ever intended or made. There was nothing incredible or improbable about plaintiff's evidence. It presented a state of facts that is usual and customary as an arrangement between husband and wife. It was not contradicted by any direct evidence nor by any legitimate inference; it was neither opposed to the probabilities nor, in its nature, surprising or suspicious, and there was no reason for denying to it conclusiveness. (*Hull* v. *Littauer*, 162 N. Y. 569, 572; *Deregibus* v. *Saracco*, 225 App. Div. 354.) On defendant's admissions in the pleadings, the exhibits and the disinterested witnesses from the savings banks, plaintiff's undisputed proof and defendant's failure to take the stand or adduce any evidence whatever to the

contrary, a directed verdict in defendant's favor was manifestly erroneous; defendant's taking of the entire fund being wrongful, as against plaintiff, demand before suit was unnecessary (1 Bradbury's Rules and Forms of Pleading, [2d ed.] p. 921; *Buckingham* v. *Vincent*, 23 App. Div. 238 [Second Dept., Cullen, J.]; *Smith* v. *Smalley*, 19 id. 519, 522); and both sides having moved for direction of a verdict, the court should have granted plaintiff's motion and denied defendant's as to the first cause of action for the proceeds of the savings accounts.

When the moneys are turned over as they should be to the ancillary committee, defendant, as plaintiff's separated wife, may make claim for reasonable support and maintenance. On the validity of such claim, if made, we do not pass. It is clear, however, on this record, that the wife is not entitled to the ownership of the fund.

Plaintiff also testified that he was the owner of two mortgage bonds and a diamond stud which he sought to replevy by his second cause of action. It was conceded that other property sought to be replevied had been returned by the wife. No proof, however, was adduced with respect to the gold watch claimed in the pleadings, and there was no proof of the value of the chattels, or the other elements requisite to establish a cause of action in replevin. In view of all the facts disclosed, we think in the furtherance of justice that a new trial should be ordered as to the second cause of action.

The judgment should be reversed, with costs, and judgment directed in plaintiff's favor against the defendant on the first cause of action in the sum of $12,570.94 with interest on $5,796.86 from February 1, 1936, on $6,064.46 from January 29, 1936, and on $709.62 from May 4, 1936, with costs, the action severed and a new trial ordered as to the second cause of action in replevin, with costs to abide the event.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.